(257 P.3d 831)
No. 103,368

STATE OF KANSAS, *Appellee*, v. SPENCER W. BANNON, *Appellant*.

Opinion filed June 17, 2011.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, and *Henry H. Blase*, of Law Offices of Blase & Blase, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before GREENE, C.J., BUSER and ATCHESON, JJ.

BUSER, J.: Spencer W. Bannon appeals his convictions in Sedgwick County District Court for driving under the influence of alcohol (DUI) in violation of K.S.A. 8-1567(a) and failure to drive within a single lane in violation of K.S.A. 8-1522(a). In accordance with the terms of a written diversion agreement, Bannon was tried before a district judge based solely on stipulated facts included in the agreement.

Bannon raises two issues on appeal. First, he contends the diversion agreement was invalid and, as a result, he should have been tried as if the agreement had never been executed. Second, Bannon claims the trial court erred in refusing to consider his motion to suppress evidence. We affirm the convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2006, Bannon was arrested and charged in Sedgwick County with DUI (a class B misdemeanor) and failure to drive within a single lane. He retained counsel.

Almost 1 year later, on May 12, 2007, Bannon and his counsel executed a written diversion agreement with the State. Under terms of the agreement, which was filed in district court, Bannon stipulated to the complaint and to a statement of incriminating material facts. He also admitted he was guilty of the charges. Bannon further agreed:

"[I]f I violate the terms and conditions of this Diversion Agreement and am taken off Diversion, this case will then proceed to trial based solely upon the·stipulated facts, and I will not be entitled nor will I attempt to present additional evidence concerning guilt or innocence at that trial."

For its part of the bargain, the State agreed to defer prosecution for 12 months and then dismiss the charges with prejudice pro-

vided that Bannon complied with numerous conditions during the 12-month period. One condition of diversion was that Bannon should not possess or consume any type of alcohol. He was warned: "Should you violate any of the conditions of this agreement . . . the [State] may . . . ask the Court to reinstate this case on the trial docket for further prosecution."

On March 7, 2008, the State moved to revoke the diversion agreement and set the matter for a bench trial because Bannon had violated the agreement by consuming alcohol. The trial court granted the State's motion, and this ruling is not challenged on appeal.

Prior to trial, Bannon, who was now represented by another retained counsel, filed a motion to "invalidate" the diversion agreement. Bannon contended: "The diversion agreement . . . did not specifically provide for a waiver of the defendant's rights to preliminary examinations and hearings and, . . . right to counsel, as required by the unambiguous language of K.S.A. 22-2909(a)." The trial court denied the motion because Bannon was not entitled to a preliminary examination in a misdemeanor case, and he had the assistance of counsel throughout the proceedings. The trial court also found that Bannon was not prejudiced by the omission of the two waivers in the diversion agreement.

Next, Bannon filed a motion to suppress evidence from the traffic stop, contending he had not crossed the lane markers or committed any other traffic offense to justify the stop of his vehicle. Bannon sought to suppress all incriminating evidence that was derived from the allegedly illegal stop of his vehicle. The trial court refused to consider the motion, stating it was "not . . . in the appropriate procedural posture for consideration by the court at this time."

At trial, the district judge considered the stipulated facts included in the diversion agreement and found Bannon guilty as charged. Bannon was sentenced to 6 months in jail, fined $1060, and placed on a 1-year probation. Bannon sought reconsideration of the trial court's adverse rulings regarding the diversion agreement and his motion to suppress evidence. The reconsideration motion was denied. Bannon appeals.

## VALIDITY OF THE DIVERSION AGREEMENT

On appeal, Bannon contends the diversion agreement was invalid because it omitted any reference to a waiver of rights to "preliminary examinations and hearings" and "rights to counsel" as required by K.S.A. 22-2909(a). The State concedes the omissions and agrees the diversion agreement was "not in conformity technically with the statute," but it maintains under the circumstances the omissions were harmless.

As a general rule, an appellate court's standard of review in matters of statutory interpretation is unlimited. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). Whether a diversion agreement complied with the requirements of K.S.A. 22-2909(a) is a question of law for which our review is also unlimited. *State v. Moses*, 38 Kan. App. 2d 840, 842, 173 P.3d 652 (2007).

Diversion agreements provide a procedure whereby a defendant charged with a crime may have the criminal prosecution stayed in the district court and ultimately obtain a dismissal with prejudice of the charges, provided the defendant complies with the conditions of the agreement. K.S.A. 22-2909 sets forth numerous provisions and procedures related to diversion agreements filed in district courts. One sentence of that statute is at issue in this litigation.

K.S.A. 22-2909(a) reads in part:

"The diversion agreement shall include specifically the *waiver of all rights* under the law or the constitution of Kansas or of the United States *to* a speedy arraignment, *preliminary examinations and hearings*, and a speedy trial, and in the case of diversion under subsection (c) *waiver of the rights to counsel* and trial by jury." (Emphasis added.)

### Subsection (c) provides:

"If a diversion agreement is entered into in lieu of further criminal proceedings on a complaint alleging a violation of K.S.A. 8-1567, and amendments thereto, the diversion agreement shall include a stipulation, agreed to by the defendant, the defendant's attorney if the defendant is represented by an attorney and the attorney general or county or district attorney, of the facts upon which the charge is based and a provision that if the defendant fails to fulfill the terms of the specific diversion agreement and the criminal proceedings on the complaint are resumed, the proceedings, including any proceedings on appeal, shall be conducted on the record of the stipulation of facts relating to the complaint." K.S.A. 22-2909(c).

Critical to Bannon's argument that the omission of the two waivers in the diversion agreement rendered it "invalid and unenforceable" is his reliance on *Moses*, 38 Kan. App. 2d 840.

In *Moses*, the defendant was charged with forgery and possession of marijuana. Moses and the State entered into a diversion agreement which was later revoked when Moses violated its terms. Moses filed a motion to dismiss which was overruled. After a bench trial based on stipulated facts set forth in the diversion agreement, Moses was found guilty as charged. He appealed, claiming the diversion agreement "was invalid because it failed to specifically include a waiver of his right to a preliminary hearing, as required by K.S.A. 22-2909(a)." 38 Kan. App. 2d at 841. Forgery is a felony. See K.S.A. 21-3710(b)(1). As a result, Moses did have a statutory right to a preliminary examination. K.S.A. 22-2902(1); 38 Kan. App. 2d at 841.

The *Moses* panel concluded that K.S.A. 22-2909(a) used "shall include" in a mandatory, not directory, sense. 38 Kan. App. 2d at 843. Thus, the "requirement that a diversion agreement contain a specific waiver of certain rights" was not "simply a technical or procedural requirement, but a condition required for the formation of an enforceable diversion agreement." 38 Kan. App. 2d 840, Syl. ¶ 2. According to the panel, the omission of a "specific waiver of Moses' right to a preliminary hearing, as mandated by K.S.A. 22-2909(a)," rendered the diversion agreement "invalid and unenforceable." 38 Kan. App. 2d at 844.

We will separately consider the two waivers omitted from Bannon's diversion agreement in light of *Moses* and other statutory and case law.

*Waiver of the right to preliminary examinations and hearings*

K.S.A. 22-2909(a) required a "waiver" in Bannon's diversion agreement of "all rights under the law or the constitution of Kansas or of the United States to . . . preliminary examinations and hearings." Bannon candidly concedes, however, he "was charged with a misdemeanor, and as a result thereof, was *not entitled* to a preliminary hearing pursuant to K.S.A. 22-2902." (Emphasis added.) Bannon's concession—which correctly states Kansas law—clearly

distinguishes the present case from the situation in *Moses*. In *Moses*, the defendant was charged with a felony, had a statutory right to a preliminary examination, but never had a preliminary examination and never waived his statutory right to that hearing. See K.S.A. 21-3710(b)(1) and K.S.A. 22-2902(1).

Although Bannon acknowledges he did not have a right to a preliminary examination, he contends the statutory language still required the diversion agreement to state that he did have such a right but waived it. In short, Bannon's reading of K.S.A. 22-2909(a) would require invalidation of the diversion agreement because it omitted the waiver of a right which, in Bannon's case, he admits did not exist.

"The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." *Arnett*, 290 Kan. 41, Syl. ¶ 1. Bannon's interpretation is unsupported by the statutory language. The statute uses the term "waiver," which means "an intentional relinquishment of a known right." *Foundation Property Investments v. CTP*, 286 Kan. 597, Syl. ¶ 6, 186 P.3d 766 (2008); see also Black's Law Dictionary 1717 (9th ed. 2009) ("The voluntary relinquishment or abandonment—express or implied—of a legal right or advantage."). Quite simply, where a right is known *not* to exist, requiring relinquishment of it is unreasonable and absurd. See *State v. Barnes*, 275 Kan. 364, Syl. ¶ 2, 64 P.3d 405 (2003) ("The legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results.").

Alternatively, Bannon attempts to bring his case under the purview of *Moses* by contending we should read "preliminary examinations and hearings," the language in K.S.A. 22-2909(a), to mean "*pretrial* examinations and hearings," *e.g.*, a "hearing on a motion to suppress evidence, or a motion to compel discovery and inspection, or a motion for a protective order, or any motion filed pursuant to K.S.A. 22-3208." Because these types of pretrial hearings also are provided for in misdemeanor cases, Bannon's statutory interpretation would impose on his misdemeanor diversion agreement the same waiver requirements as in a felony diversion agreement.

The trial court found the terms "preliminary examinations" and "preliminary hearings" to be "synonymous." Under the "plain meaning and common understanding of criminal procedure" the trial court concluded that the "specific intent of the legislature . . . was directed towards felony cases."

Assuming a defendant could, as a practical matter, waive all pretrial hearings, we disagree with Bannon's contention that the phrase "preliminary examinations and hearings" does not specifically refer to hearings conducted pursuant to K.S.A. 22-2909 but means any and all pretrial examinations and hearings.

Preliminary examinations are controlled by a statute found in the same article of the Kansas Code of Criminal Procedure as the diversion statute. See K.S.A. 22-2902 and K.S.A. 22-2909. In relevant part, K.S.A. 22-2902 provides that a person charged with a felony has a right to a preliminary examination to determine if a felony has been committed and there is probable cause to believe the defendant committed it. The statute specifically anticipates occasions wherein a defendant will waive the right to a preliminary examination. See K.S.A. 22-2902(4).

In Kansas case law, the terms preliminary examination and preliminary hearing are used interchangeably to mean a hearing in a felony case, pursuant to K.S.A. 22-2902, to determine if there is probable cause to believe that the defendant committed a felony. In *Moses*, for example, Judge Caplinger used both terms throughout the opinion to reference the hearing described in K.S.A. 22-2902. See 38 Kan. App. 2d at 841("[Moses] asserts the diversion agreement was invalid because it failed to specifically include a waiver of his right to a *preliminary examination* . . . . We agree that the diversion agreement's omission of a waiver of the defendant's right to a *preliminary hearing* rendered the agreement invalid." [Emphasis added.]).

For its part, the State highlights *State v. Phifer*, 241 Kan. 233, 238, 737 P.2d 1 (1987), where our Supreme Court observed that Kansas appellate courts "have never been consistent when labeling that [K.S.A. 22-2902] hearing in our opinions" and noted that appellate courts refer to preliminary examinations and preliminary hearings synonymously. The State also references a legal dictionary

which defines a probable cause hearing as a "preliminary hearing" and includes a note within the definition of preliminary hearing that it is also termed a "preliminary examination." Black's Law Dictionary 1299, 1321 (9th ed. 2009).

Perhaps the best indication of the legislature's intent in using the terminology "preliminary examinations and hearings" in K.S.A. 22-2909(a) is found in the Kansas Code of Procedure for Municipal Courts, K.S.A. 12-4101 *et seq.* Diversion agreements filed in municipal courts are governed by K.S.A. 12-4416.

K.S.A. 12-4416, which contains a provision similar to K.S.A. 22-2909(a), does not make any reference to the phrase "preliminary examinations and hearings." The statute provides: "The diversion agreement shall include specifically the waiver of all rights under the law or constitution of Kansas or of the United States to counsel, a speedy arraignment, a speedy trial, and the right to trial by jury." K.S.A. 12-4416(a). If Bannon's interpretation was correct, and the legislature intended the phrase "preliminary examinations and hearings" as used in K.S.A. 22-2909(a) to mean all *pretrial* examinations and hearings, the legislature would have included the former phrase in K.S.A. 12-4416, because defendants in municipal court may file pretrial motions such as motions to suppress evidence. See *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 457, 980 P.2d 1022 (1999).

Of course, the evident reason for the omission of the phrase "preliminary examinations and hearings" in K.S.A. 12-4416(a) is that without a right to a preliminary hearing in nonfelony cases, there is never a need for such a waiver in municipal court diversion agreements. Similarly, we conclude the omission of such language in Bannon's misdemeanor case, where no such statutory or constitutional right existed, did not invalidate the entire diversion agreement.

Finally, Bannon argues that we must follow *Moses* under the doctrine of stare decisis. "The doctrine of stare decisis generally requires the same court and all courts of lower rank [to] follow an established point of law in subsequent cases pertaining to the same legal issue." *State v. Pressley*, 290 Kan. 24, Syl. ¶ 3, 223 P.3d 299 (2010). The panel in *Moses* believed "strict compliance" with

K.S.A. 22-2909(a) was "essential to the preservation of the constitutional rights of the parties affected." 38 Kan. App. 2d 840, Syl. ¶ 2. Because the preservation of the statutory or constitutional rights of the parties is not at issue here, however, *Moses* did not deal with "the same legal issue." Moreover, one panel of the Court of Appeals has "the right to disagree with a previous panel of the same court." *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010).

As the panel in *Moses* noted, the legislature did not "specify a penalty or other consequence for noncompliance" with K.S.A. 22-2909(a). 38 Kan. App. 2d 840, Syl. ¶ 2. We will not rule the "entire agreement . . . invalid," as did the panel in *Moses*, 38 Kan. App. 2d 840, Syl. ¶ 3, when Bannon's statutory or constitutional rights are not at stake. To do so would significantly broaden the scope of *Moses* and apply its law to a wholly dissimilar case. Moreover, as our Supreme Court instructed in another diversion case, "it is the duty of the courts to sustain the legality of contracts in whole or in part when possible." *Petty v. City of El Dorado*, 270 Kan. 847, 853-54, 19 P.3d 167 (2001). Finally, to grant Bannon relief under these circumstances would be contrary to the legislature's mandate to our appellate courts:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court." K.S.A. 60-2105.

The omission of the waiver of preliminary examinations and hearings in the misdemeanor diversion agreement had no effect—let alone a prejudicial effect—on Bannon's statutory or constitutional rights. Accordingly, under these circumstances, there was no basis to invalidate the agreement.

*Waiver of the right to counsel*

Because the trial court sentenced Bannon to a suspended term in the county jail, he had a Sixth Amendment constitutional right to counsel at all critical stages of his prosecution. See *Alabama v. Shelton*, 535 U.S. 654, 658, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002); *United States v. Jackson*, 493 F.3d 1179, 1182 (10th Cir. 2007); *State v. Youngblood*, 288 Kan. 659, 670, 206 P.3d 518 (2008).

Bannon's diversion agreement should have included a waiver of his right to counsel. See K.S.A. 22-2909(a) and (c). Under the circumstances, however, was the omission of the waiver of counsel reversible error?

The *Moses* panel held the *"omission* of a statutorily required waiver" from the diversion agreement at issue there rendered it "invalid." 38 Kan. App. 2d at 845. The *Moses* panel read K.S.A. 22-2909(a) this way—the lack of a " 'penalty or other consequence for noncompliance' " notwithstanding—because "strict compliance with the provision is essential to the preservation of the rights of parties affected." 38 Kan. App. 2d at 844. As discussed earlier, while the defendant in *Moses* had a statutory right to a preliminary examination, he had not waived or exercised that right.

In the present case, however, Bannon *did* exercise his right to counsel throughout every stage in the litigation. Bannon's retained counsel filed a motion for discovery and inspection after Bannon's arrest, and along with his client, executed the diversion agreement. Bannon's counsel also represented him at the hearing on the motion to revoke the diversion agreement, filed pretrial motions, and represented Bannon at the bench trial and on appeal. In this context, Bannon's case is very different from *Moses*.

As the trial court succinctly observed in denying Bannon's motion to invalidate the diversion agreement on the basis that Bannon did not waive his right to counsel: "It's awfully hard to exercise a right and waive it simultaneously." Since waiver means relinquishment—and Bannon did not relinquish counsel—he obviously did not waive his right to counsel. And strict compliance with the waiver of counsel provision in K.S.A. 22-2909(a) was unnecessary

under the circumstances because Bannon's constitutional rights were protected at each and every stage of the litigation by his retention of counsel.

We return to the rationale undergirding *Moses*, where the panel held that " 'strict compliance with [K.S.A. 22-2909(a)] is essential to the preservation of the rights of parties affected.' " 38 Kan. App. 2d at 843. Clearly, no constitutional rights to counsel were implicated in the present case. Under these circumstances, we are obligated to uphold the legality of the diversion agreement in whole or in part. See *Petty*, 270 Kan. at 853-54. And we reiterate that the legislature did establish our duty to "disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining." K.S.A. 60-2105. The error in Bannon's case, the omission of a waiver for a right he fully exercised, was merely technical. Our review of the entire record convinces us that "substantial justice has been done." K.S.A. 60-2105. The trial court correctly enforced the diversion agreement under these circumstances.

In summary, we hold that where no waiver is included in the diversion agreement, contrary to K.S.A. 22-2909(a), and a defendant is not afforded the right in question, as in *Moses*, the agreement may not be enforceable. Where no waiver is included in the diversion agreement, contrary to K.S.A. 22-2909(a), and a defendant has no right in question, the agreement may be enforceable. Similarly, where no waiver is included in the diversion agreement, contrary to K.S.A. 22-2909(a), and a defendant exercises the right in question, the diversion agreement also may be enforceable.

## MOTION TO SUPPRESS EVIDENCE

For his second issue on appeal, Bannon contends the trial court erred by refusing to consider his motion to suppress evidence.

Contrary to his admission of guilt and incriminating stipulations included in the diversion agreement, Bannon alleged in his motion that he "committed no traffic infractions while driving." He asked the trial court to "find that all evidence obtained . . . subsequent to the illegal stop of his vehicle and person be suppressed." The trial court found the motion was "out of order" because Bannon

had "stipulated to what is in the police report." The trial court declined to consider the suppression motion, stating it was "not . . . in the appropriate procedural posture for consideration by the court at this time."

On appeal, Bannon argues the diversion agreement "does not state that the stipulated facts cannot be further limited through a suppression hearing." He also asserts a denial of due process because he was denied the opportunity to seek suppression of the incriminating evidence. "Whether due process has been accorded in a particular case is a question of law. [Citation omitted.]" *In re Doe*, 277 Kan. 795, 807-08, 90 P.3d 940 (2004).

The diversion agreement provided that upon revocation, "this case will then proceed to trial based *solely* upon the stipulated facts, and I will not be entitled nor will I attempt to present additional evidence concerning guilt or innocence at that trial." (Emphasis added.)

In the diversion agreement, Bannon stipulated that he drove his vehicle while the alcohol concentration in his breath was .155 grams of alcohol per 210 liters of breath, "which is in excess of what is legally permissible under K.S.A. 8-1567(a)(2)." He also stipulated that at that time he was "under the influence of alcohol to a degree that I was incapable of safely driving" the vehicle. Additionally, Bannon stipulated that he "did fail to drive as nearly as practicable entirely within a single lane, a violation of K.S.A. 8-1522(a)." Finally, Bannon stipulated and agreed that the allegations in the complaint were "true and factually correct. *Defendant admits he/she is guilty of the charges* alleged in this case." (Emphasis added.)

Given the plain language of the diversion agreement, the stipulated facts, and Bannon's admission of guilt to the charges in the complaint, we find no error in the trial court's refusal to consider Bannon's motion to suppress evidence. By seeking suppression of incriminating evidence, Bannon violated the terms of the agreement which provided that upon revocation of diversion, he would "proceed to trial based solely on the stipulated facts." He also attempted to "present additional evidence concerning guilt or innocence at that trial" which was another violation of the agreement.

"Parties are bound to their stipulations, however, and a trial court or appellate court must render judgment based on those stipulated facts. [Citation omitted.]" *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 269, 202 P.3d 7 (2009); *State v. Stegman,* 41 Kan. App. 2d 568, Syl. ¶ 1, 203 P.3d 52 (2009). Moreover, the legislature explicitly provided that after revocation, "the proceedings, including any proceedings on appeal, shall be conducted on the record of the stipulated facts." K.S.A. 22-2909(c).

In accord with the statutory provisions, the diversion agreement plainly set forth Bannon's rights and responsibilities. Bannon executed the diversion agreement indicating that he understood all the contents of the agreement. In short, he knowingly and voluntarily agreed to the diversion procedures which provided for a trial based solely on stipulated facts. As a result, Bannon received all the process that was due. See *Thompson v. U.S.D. No. 259,* 16 Kan. App. 2d 42, 49, 819 P.2d 1236 (1991) ("The constitutional right to due process may be waived.").

Finally, assuming the trial court had permitted a hearing on the motion and had suppressed the evidence, there would have been no effect on the outcome. Given that Bannon's incriminating stipulations (which included an admission of guilt) would control the verdict in any event, the motion to suppress evidence was moot. According to the terms of the diversion agreement, the trial court did not err in refusing to consider the motion to suppress evidence. See *State v. Bennett,* 288 Kan. 86, 89, 200 P.3d 455 (2009).

Affirmed.